**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

| | |
|---|---|
| **FARMERS BANK AND TRUST COMPANY** | **PLAINTIFF** |
| v. CASE NO. 3:10-CV-00173 BSM | |
| **AMERIS OF ARKANSAS, LLC;** <br> **AMERIS OF OSCEOLA, LLC;** <br> **FIRST TENNESSEE BANK NATIONAL** <br> **ASSOCIATION; and** <br> **MISSISSIPPI COUNTY, d/b/a** <br> **MISSISSIPPI COUNTY HOSPITAL SYSTEM** | **DEFENDANTS** |
| **MISSISSIPPI COUNTY, d/b/a** <br> **MISSISSIPPI COUNTY HOSPITAL SYSTEM** | **CROSSCLAIMANT** |
| v. | |
| **FIRST TENNESSEE BANK NATIONAL** <br> **ASSOCIATION** | **CROSSDEFENDANT** |
| **FIRST TENNESSEE BANK NATIONAL** <br> **ASSOCIATION** | **CROSSCLAIMANT** |
| v. | |
| **MISSISSIPPI COUNTY, d/b/a** <br> **MISSISSIPPI COUNTY HOSPITAL SYSTEM** | **CROSSDEFENDANT** |

**ORDER**

Defendant/crossclaimant/crossdefendant Mississippi County Hospital System ("the County") moves to remand to state court and seeks an award of its costs and attorneys' fees in connection with its motion. [Doc. No. 15]. Defendant/crossclaimant/crossdefendant First Tennessee Bank National Association ("First Tennessee") objects. [Doc. No. 20]. For the reasons set forth below, the County's motion is denied.

I. BACKGROUND

In December of 2004, the County leased two of its hospitals. Its hospital in Blytheville, Great River Medical center, was leased to Ameris of Arkansas, LLC, and its hospital in Osceola, South Mississippi Regional Medical Center, was leased to Ameris of Osceola, LLC (Ameris of Arkansas and of Osceola are hereafter collectively "Ameris").

In January of 2005, Ameris borrowed money from First Tennessee. As security, Ameris entered a leasehold mortgage and gave First Tennessee a security interest in its accounts.

In March of 2009, Ameris's hospital lease with the County was terminated. Ameris and the County agreed that all termination accounts receivable would be deposited into a designated account and established the '98 escrow account at Farmers Bank and Trust Company ("Farmers") to hold all pre- and post-termination receivables.

First Tennessee aided the transaction between Ameris and the County. In September of 2009, it executed release deeds, permitting Ameris to convey the hospitals back to the County. Each deed, however, reserved First Tennessee's security interest in the receivables. Shortly thereafter, the County began transferring funds to the '98 escrow account. It also appears that the County authorized at least one transfer from the '98 escrow account to a trust account in Nashville, Tennessee belonging to Sam McAllester, attorney for First Tennessee.

On July 1, 2010, the County received a Notice of Amount of Medicare Program Reimbursement ("NPR") stating that the hospitals received substantial overpayments during

2008 and that all such amounts had to be repaid in order for the hospitals to continue receiving Medicare reimbursement. That same day, Phil Norris, Chief Financial Officer for the County, transferred $773,260 from the escrow account at Farmers to the County's '74 operating account at Farmers, on which he immediately drafted a check in the same amount to Medicare. In response, Sam McAllester contacted Farmers to express First Tennessee's objections to that transfer and to reiterate its position that it holds a valid and perfected security interest in the receivables deposited in the escrow account.

On July 2, 2010, Farmers filed a claim for interpleader in the Mississippi County Circuit Court. The suit, which seeks to determine what Farmers should do with the funds held in the '98 and '74 accounts, names as Ameris, First Tennessee, and the County as defendants.

The County answered and crossclaimed against First Tennessee on July 9, 2010. First Tennessee removed the case on July 30, 2010, asserting subject matter jurisdiction under 28 U.S.C. § 1332 and seeking realignment of the parties as follows: (1) plaintiffs, the County, Ameris of Arkansas, and Ameris of Oseola; and (2) defendant, First Tennessee. First Tennessee maintains that this alignment best expresses the interests of the parties because (1) Farmers' status as an interpleader plaintiff renders it a nominal party, and (2) the actual dispute is between First Tennessee and the other defendants. On August 12, 2010, First Tennessee amended its answer and crossclaimed against the County, the members of its Board of Governors in their official capacities, and Phil Norris, both individually and in his official capacity as its Chief Financial Officer.

The County seeks remand arguing that (1) there is a lack of complete diversity between the parties, (2) First Tennessee's failure to receive consent from the other defendants rendered its notice of removal ineffective, and (3) realignment of the parties is inappropriate. First Tennessee objects to each argument and maintains removal was proper.

## II. DISCUSSION

The jurisdiction of federal courts is narrowly confined and must be established as a threshold matter. *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir.1998). The burden of establishing federal subject matter jurisdiction rests upon the party seeking removal and opposing remand. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). When faced with a motion for remand, a district court is required to "resolve all doubts about federal jurisdiction in favor of remand." *Id.*

First Tennessee argues correctly that had Farmers originally filed suit in this court, there would be no jurisdictional issue. The federal interpleader statute, 28 U.S.C. § 1335, confers original jurisdiction upon district courts of "any civil action of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more" so long as (1) "two or more adverse claimants, of diverse citizenship . . . , claim to be entitled to such money or property" and (2) "the plaintiff has deposited such money or property . . . into the registry of the court." There is significantly more than $500 at stake, Farmers's original complaint sought to interplead the funds held in the '98 and '74 deposit accounts, and most importantly,

First Tennessee and the County are adverse claimants of diverse citizenship. Therefore, the district court would have had subject matter jurisdiction over the case had it been filed here in the first place. Removal jurisdiction, however, is a separate matter and, in this case, proves to be more difficult to obtain.

Under 28 U.S.C. § 1441(b), a non-federal-question case is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This principle is known as the forum defendant rule and is incapable of being waived. *See Horton v. Conklin*, 431 F.3d 602, 605 (8th Cir. 2005). Because Ameris and the County were properly joined and served as defendants and are citizens of Arkansas—the state in which the case was brought—the forum defendant rule prevents removal to federal court. Although First Tennessee argues that Ameris's citizenship should be disregarded because it is a nominal party, the County remains a real party in interest, and its citizenship alone prevents removal.

Moreover, as argued by the County, First Tennessee's notice of removal was defective because it was issued without the consent of the other defendants. First Tennessee again argues that a "nominal parties" exception applies whereby parties whose presence is unnecessary to the disposition on the merits may be ignored for the purposes of notice and consent. Although such an exception exists, it does not apply to a real party in interest such as the County.

Thus, at first glance, the facts of the case appear to compel remand. Upon further

inquiry, however, logic dictates that jurisdiction lies herein. To begin, the original state-court party alignment is not binding upon a federal court sitting on the basis of diversity of citizenship. Wright, Miller & Kane, *Federal Practice and Procedure* § 3607. For purposes of removal, federal law determines who is a plaintiff and who is a defendant. *Id.* § 3723. As such, a federal court must realign the parties according to their sides in the dispute. *Id.* § 3607. Alignment is proper when parties with the same ultimate interests in the outcome of the action are on the same side of the litigation. *Id.* Accordingly, the basic inquiry is to discern "the principal purpose of [the] suit and [the] primary and controlling matter in dispute." *Universal Underwriters Insurance Co. v. Wagner*, 367 F.2d 866, 870 (8th Cir. 1966).

The interests of First Tennessee and the County stand in direct opposition. The principal purpose of the suit is to determine who is entitled to the funds held in the '98 and '74 accounts at Farmers Bank and Trust: First Tennessee or the County. The primary and controlling matter in dispute is the legal effect of both First Tennessee's purported security interest and the termination and receivables agreement. Therefore, it is clear that First Tennessee and the County must be on opposite sides of this litigation.

Once Farmers interpleads the funds into the court's registry, its interest in the case is terminated. Ameris has no counsel of record and, as a corporate entity, cannot appear pro se. Furthermore, no party has indicated that Ameris is entitled to any of the funds. Therefore, it is arguable whether it even has a place in this litigation. At any rate, Ameris may certainly

be disregarded for purposes of determining whether there is complete diversity. *See Iowa Public Service Co. v. Medicine Bowl Coal Co.*, 556 F.2d 400, 403-04 (8th Cir. 1977).

This leaves only First Tennessee and the County as real parties in interest. The County argues that First Tennessee's proposed realignment, designating the County and Ameris as plaintiffs and First Tennessee as defendant, is arbitrary and was contrived solely to support federal jurisdiction. It could be argued, however, that the opposite alignment is equally arbitrary and would be contrived solely to defeat federal jurisdiction. Indeed, district courts around the country have recognized the futility of trying to determine who is a plaintiff and who is a defendant in interpleader actions. *See, e.g.*, *Tune, Entrekin & White v. Magid*, 220 F. Supp. 2d 887 (M.D. Tenn. 2002); *Hidey v. Waste Systems International, Inc.*, 59 F. Supp. 2d 543 (D. Md. 1999); *Mandalay Oil & Gas v. Energy Development* Corp., No. 98-CV-3080, 1998 WL 850531 (E.D. La. Dec. 8, 1998); *O'Keefe, Ashenden, Lyons & Ward v. National Telecommunications Consultants, Inc.*, No. 91-CV-2688, 1991 WL 140130 (N.D. Ill. July 22, 1991). Because the party designation will necessarily be dispositive on the question of diversity jurisdiction, courts either (1) automatically remand based on the principle of strictly construing federal jurisdiction, or (2) realign the parties "so that their rights are the same as they would have been had they not been artificially aligned as co-defendants in the interpleader action." *Hidey*, 59 F. Supp. 2d at 546.

The latter rule is substantially fairer, both in the abstract and as applied to this case. Had First Tennessee sued the County, it could have done so in federal district court pursuant

to 28 U.S.C. § 1332. Likewise, if the County brought suit, First Tennessee could have removed the case pursuant to 28 U.S.C. § 1441. Thus, the County would not be able to keep First Tennessee in state court but for Farmers filing the interpleader action there in the first place. To deny First Tennessee access to a federal forum based on a procedural accident places form over substance. The realignment sought by First Tennessee conforms with the purpose of Article III, Section 2 of the Constitution and the federal jurisdictional statutes in Title 28 of the United States Code.

Accordingly, the County's motion for remand is denied, Farmers is directed to deposit the disputed funds into the registry of the court, and the parties are hereby realigned as follows: plaintiffs, Ameris of Arkansas, LLC, Ameris of Osceola, LLC, and Mississippi County, d/b/a Mississippi County Hospital System; defendant, First Tennessee Bank National Association. Following receipt of the disputed funds from Farmers Bank and Trust Company, that party will be discharged from any further liability regarding the funds in the '98 and '74 accounts.

IT IS SO ORDERED this 25th day of October, 2010.

_____
UNITED STATES DISTRICT JUDGE