# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

| | |
|---|---|
| MISSISSIPPI COUNTY d/b/a MISSISSIPPI COUNTY HOSPITAL SYSTEM; AMERIS OF ARKANSAS, LLC; AND AMERIS OF OSCEOLA, LLC | PLAINTIFFS |

v.                     CASE NO. 3:10CV00173 BSM

| | |
|---|---|
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION | DEFENDANT |
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION | COUNTERCLAIMANT |

v.

| | |
|---|---|
| MISSISSIPPI COUNTY d/b/a MISSISSIPPI COUNTY HOSPITAL SYSTEM | COUNTERDEFENDANT |
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION | THIRD-PARTY PLAINTIFF |

v.

MIKE HUFFMAN,
In His Official Capacity as Board of Governors
of the Mississippi County Hospital System;
ROGERS FORD,
In His Official Capacity as Board of Governors
of the Mississippi County Hospital System;
BOBBIE J. HAMPTON,
In His Official Capacity as Board of Governors
of the Mississippi County Hospital System;
JOHN LOGAN,
In His Official Capacity as Board of Governors
of the Mississippi County Hospital System;

**SYLVIA PREWITT,**
**In Her Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**VAN PARKER,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**EARL SMITH,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**WARRANT WHITIS,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System; AND**
**PHIL NORRIS,**
**Individually and in His Official Capacity as**
**Chief Financial Officer**
**of the Mississippi County Hospital System**                **THIRD-PARTY DEFENDANTS**


**MIKE HUFFMAN,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**ROGERS FORD,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**BOBBIE J. HAMPTON,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**JOHN LOGAN,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**SYLVIA PREWITT,**
**In Her Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**VAN PARKER,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**
**EARL SMITH,**
**In His Official Capacity as Board of Governors**
**of the Mississippi County Hospital System;**

**WARRANT WHITIS,**
In His Official Capacity as Board of Governors
of the Mississippi County Hospital System;          **COUNTERCLAIMANTS**

**v.**

**FIRST TENNESSEE BANK**
**NATIONAL ASSOCIATION**                             **COUNTERDEFENDANT**

## ORDER

Mississippi County d/b/a Mississippi County Hospital System; Mike Huffman, Rogers Ford, Bobbie J. Hampton, John Logan, Sylvia Prewitt, Van Parker, Earl Smith, Warrant Whitis, in their official capacities as the Board of Governors of the Mississippi County Hospital System; and Phil Norris, individually and in his official capacity as Chief Financial Officer of the Mississippi County Hospital System (collectively, "the County") move for partial summary judgment. [Doc. No. 49]. Defendant First Tennessee National Bank ("First Tennessee") has filed a response in opposition, [Doc. No. 53] and the County has replied. [Doc. No. 59]. For the reasons set forth below, partial summary judgment is granted.

### I. BACKGROUND

Viewed in the light most favorable to First Tennessee, the nonmoving party, the uncontroverted facts are as follows. From December 1, 2005, until March 12, 2009, the County leased two hospitals to two corporate operators, which for the purposes of this motion shall be referred to collectively as Ameris. During the lease, Ameris provided medical services to Medicare and Medicaid patients. As such, Ameris received interim

periodic payments which were subject to reconciliation and adjustment at the end of each fiscal year.

In January 2005, Ameris borrowed money from First Tennessee and gave it a security interest in its accounts. When the leases terminated, Ameris and the County agreed that all monies received post-termination should be deposited into a designated account and that Ameris was entitled to retain all receivables arising from services rendered up to the termination date. On April 30, 2009, the parties executed a "memorandum of understanding" which established an escrow account to hold receivables during the transition period. Under the terms of that agreement, First Tennessee, as Ameris's secured creditor, was entitled to receivables attributable to services rendered before termination while the County would take all receivables attributable to services rendered after termination.

On July 1, 2010, Centers for Medicare and Medicaid Services (CMS) issued a Notice of Amount of Medicare Program Reimbursement (NPR) to the County, demanding prompt remittance of overpayments made during 2008. That year, Ameris received interim payments that exceeded the amount to which it was actually entitled by $1,064,084. Because the overpayments were made pre-termination, the County's position is that CMS should be paid out of pre-termination receivables. First Tennessee vigorously objects, arguing that such a transfer would violate its perfected security interest in those funds.

The County moves for an order determining whether CMS's interest in the escrowed funds is superior to any interest claimed by First Tennessee. The facts germane to this

question are not in dispute, and a brief analysis is set forth below.

## II. DISCUSSION

First Tennessee's security interest in Ameris's accounts arose in connection with loans made in 2005. Therefore, it is understandable that First Tennessee could believe that its security interest is senior to CMS's 2010 claim for overpayments made in fiscal year 2008. The unique character of Medicare provider reimbursement, however, mandates the opposite result.

Periodic interim payments made to providers that treat Medicare beneficiaries are subject to audit and adjustment. 42 U.S.C. § 1395g. Numerous courts have held that the scheme of estimation, interim payment, audit, and reconciliation are indicative of one ongoing, integrated transaction. *See In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 4 (1st Cir. 2004). Further, because this statutory right of recoupment or setoff existed prior to First Tennessee's interest in Ameris's accounts, it must be considered senior in priority. *See In re Metropolitan Hosp.*, 131 B.R. 283, 291 (E.D. Pa. 1991).

This outcome makes sense because First Tennessee cannot take more than what Ameris gave it. As noted by the court in *In re Alliance Health of Fort Worth, Inc.*, an assignee cannot take more than what the assignor would be entitled to had it not assigned the claim. 240 B.R. 699, 704 (N.D. Texas 1999). This is why the parties' memorandum of understanding provides that First Tennessee is entitled to *net* pre-termination receivables; the agreement itself recognizes that accounts receivable were not fixed in value until after

CMS performed its audit and made necessary adjustments. Given its valid security interest, First Tennessee stands in the shoes of Ameris. Indeed, had CMS determined that Ameris was underpaid during fiscal year 2008, First Tennessee would have been entitled to those extra funds. Unfortunately for First Tennessee, the opposite holds true as well.

Accordingly, the County's motion for partial summary judgment is granted. Although First Tennessee has a valid security interest in Ameris's accounts, that interest does not attach until CMS audits and finalizes payments after each fiscal year. *See In re Metropolitan*, 131 B.R. at 291.

Dated this 1st day of June 2011.

_____
UNITED STATES DISTRICT JUDGE